**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **DARREN LUBBE,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **A-18-CV-1011-RP** |
| **MARK MILANOVICH, ET AL.,** | § | |
| **Defendants.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

Before the court is Defendants' Motion for Summary Judgment (Dkt. #85) and all related briefing.[1] Having considered the parties' written submissions, the pleadings, the relevant case law, as well as the entire case file, and having conducted a hearing on the motion, the undersigned submits the following Report and Recommendation to the District Court.

I.   **BACKGROUND**

A.   **Factual Background[2]**

Darren Lubbe is a retired special agent with the Criminal Investigation Division ("CID") of the Texas Department of Public Safety ("DPS"). Lubbe worked as a CID special agent in Mt. Pleasant, Texas and also served on the DPS Special Response Team ("SRT"). During his time in Mt. Pleasant, Lubbe worked with CID Special Agent Christopher Brock. The remaining defendants were all within Lubbe's chain of command.[3] Lubbe was supervised in Mt. Pleasant by

---

[1] The motion was referred by United States District Judge Robert Pitman to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636, Rule 72 of the Federal Rules of Civil Procedure, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

[2] This case was consolidated with *Lubbe v. McCraw*, 1:19-CV-1073-RP, which involves overlapping central facts. Dkt. #61.

[3] At the hearing, Lubbe's counsel indicated Lubbe would be dismissing his claims against Lieutenant Brandon Negri, an investigator with the DPS Office of Inspector General. Accordingly, the undersigned will recommend that

1

Captain Milanovich and Lieutenant Mulch.  Jeff Williams was the CID Regional Major for North Texas and Capt. Milanovich's direct superior. Tom Ruocco is the CID Chief and was the top of Lubbe's chain of command, except for Steve McCraw, the Director of the Texas Department of Public Safety.

The undersigned has previously described in detail Lubbe's version of events, which remain essentially unchanged.  *See* Dkt. #18, #40; Dkt. #30 in 1:19-CV-1073-RP.  Lubbe contends he refused to attend Capt. Milanovich's "Cowboy Church," triggering an ongoing campaign of harassment from Capt. Milanovich, who—Lubbe claims—tolerated corruption and dishonesty in the Mount Pleasant CID office and demonstrated favoritism toward agents who attended his church or who were otherwise obsequious toward him.  Lubbe further asserts he was retaliated against with disciplinary measures and eventually was involuntarily transferred, forcing him to resign, because he filed a complaint with DPS's Equal Employment Office ("EEO") concerning Capt. Milanovich and a retaliation complaint against DPS with the U.S. Equal Employment Opportunity Commission ("EEOC").  Dkt. #92-1 (Lubbe Decl.) at ¶¶ 41, 63; *see* Dkt. #85 Exh. A (EEOC Complaint) at 637-42 (EEO Complaint).

Now for the first time, Defendants have their opportunity to present their version of events. Defendants contend Lubbe was a "DPS employee who habitually played fast and loose with rules and authority, imagined private feuds with colleagues, unilaterally destroyed his credibility, refused to accept the logical consequences of his actions, and ultimately abandoned his career to pursue personal vendettas."  Dkt. #85 at 1. Defendants assert that Lubbe's previous supervisor began documenting workplace issues with Lubbe as early as February 2014.  *See* Dkt. #85 at 4-7.

---

all claims against Lt. Negri be dismissed with prejudice. Additionally, the analysis of this Report and Recommendation applies equally to Lt. Negri.

Those issues included Lubbe openly expressing interest in killing a criminal suspect, causing some people to have deep reservations about working with him. *Id*. (citing Exh. D at 1233-1238). Defendants describe Lubbe as blaming everyone else for any interpersonal issues, including Lubbe describing fellow Agent Brian Perry as "butt hurt" because Lubbe shot up a car while Agent Perry was sitting in the passenger seat. *Id*. (citing Exh. E (Lubbe Depo.) at 69:20-70:5). Defendants also describe that Lubbe received a formal counseling on February 20, 2014, which included obligations to refrain from certain law enforcement actions without express prior permission,[4] shave his beard, cover his tattoos, and no longer work undercover. *Id*. (citing Exh. D at 1239).

In the fall of 2016, Lubbe and Agent Brock were involved in what is now known as the "Tire Incident." On October 7, 2016, using a DPS funds, Lubbe purchased new tires for his DPS truck and gave the old tires to Agent Brock for his personal use. Dkt. #85 Ex. B at 572-76, Exh. E (Lubbe Depo.) at 102:4-124:25. Later that month, Capt. Milanovich confronted Lubbe about the cost of the tires and ordered Lubbe to tell Agent Brock to return the tires. Dkt. #85 Ex. B at 573. Although Lubbe contends he did nothing wrong, there was concern as to Lubbe's judgment and whether all four tires actually needed to be replaced, the cost of the new tires, and whether Lubbe unnecessarily replaced the tires so that he could give the old tires to Agent Brock. Dkt. #85 Exh. B at 573, Exh. J (Milanovich Depo.) at 9:19-10:10, 19:21-20:2. An administrative inquiry was made into Lubbe's purchase of the tires and his disposal of the old tires. Dkt. #85 Ex. B at 573-74. On November 2, 2016, Capt. Milanovich told Lubbe there would be no formal complaint but he should expect a regional written reprimand, possibly an unscheduled evaluation, and he had to resign from SRT. Dkt. #85 Ex. B at 574. On November 13, 2016, Lubbe met with Maj. Williams who told him he would be disciplined for the Tire Incident. Dkt. #85 Ex. E (Lubbe Depo.) at

---

[4] Absent an emergency, Lubbe was instructed to refrain from taking any enforcement actions such as arrests, use of force actions, traffic stops, etc., without first contacting his supervisor. Dkt. #85 at Exh. D at 1239.

38:23-39:3. The next day, on November 14, 2016, Lubbe filed a complaint with the DPS EEO office, alleging misconduct and religious harassment by Capt. Milanovich. Dkt. #85 Exh. A at 637-42 (EEO Complaint); Dkt. #85 Exh. E (Lubbe Depo.) at 38:23-39:11. Later that day, Maj. Williams formally referred the Tire Incident to OIG for review. Dkt. #85 Ex. B at 574.

Lubbe generally contends more harassment followed the EEO complaint by his chain of command, including a negative performance review in April 2017 in which he was effectively assigned to desk duty. Dkt. #92-1 (Lubbe Decl.) at ¶ 46. He also contends he was wrongly disciplined for a June 22, 2017 traffic stop (the "Traffic Stop"), in which he saw someone coming out of wooded area with what Lubbe thought was a rifle, enter the passenger side of a vehicle, and drive off. Dkt. #85 Exh. E (Lubbe Depo.) at 133:14-141:13. Without permission, Lubbe followed and stopped the vehicle and learned the passenger had left a BB-gun near a lake while fishing and had returned to retrieve it.  Dkt. #85 Exh. E (Lubbe Depo.) at 133:14-141:13. Lubbe contends he had reasonable suspicion for the stop because burglaries had been committed in the area, even though there was no immediate report of a burglary. *Id*. The Traffic Stop prompted someone to call 911 and report that a person in body armor and with a weapon (Lubbe) was holding others at gunpoint. Dkt. #85 Exh. A at 647-48. As a result of the Traffic Stop, Lubbe received a disciplinary write up in the form of an HR-31. Dkt. #85 Exh. A at 647-48 (copy of HR-31). Lubbe was ordered to shave, dress in business casual, report daily to Lt. Mulch, and take remedial classes within 1 year. *Id*.  About two weeks later, Lubbe received a second HR-31, which documented Lubbe's lack of compliance to the first HR-31. Dkt. #85 Exh. A at 649-50 (copy of second HR-31). Lubbe contends the second HR-31 was further retaliation.

On August 10, 2017, Lubbe was suspended 5 days without pay and placed on six months of probation for the Tire Incident. Dkt. #85 Exh. A at 651-52. The following day, on August 11,

2017, Lube filed an EEOC complaint. Dkt. #85 Exh. A. On August 30, 2017, Lubbe met with Chief Ruocco to appeal his punishment for the Tire Incident, but Chief Ruocco overruled his appeal. Dkt. #92-1 (Lubbe Decl.) at ¶¶ 65-66. On September 28, 2017, Lubbe appealed the decision to Director McCraw, who reduced the punishment to a one-day suspension without pay. Dkt. #92-1 (Lubbe Decl.) at ¶¶ 67, 70; Dkt. #85 Exh. B 548-49 (letter from Dir. McCraw to Lubbe).

On November 3, 2017, Lubbe was ordered transferred from the Mt. Pleasant office. Dkt. #85 Exh. C. He did not seek to appeal the transfer through DPS's appeal processes even though he had previously just succeeded in having his discipline for the Tire Incident reduced through that process. Lubbe contends that he told Director McCraw at the September 28, 2017 meeting that he could not transfer to another office because a custody order prohibited Lubbe's wife and step-children from moving more than three counties away; thus any appeal of the transfer order would have been futile. Instead of attempting to challenge the transfer order, Lubbe resigned.

The undersigned previously provided the District Judge with several Reports and Recommendations addressing Defendants' earlier motions to dismiss.  Dkt. #18, #40; Dkt. #30 in 1:19-CV-1073-RP.  In those Reports and Recommendations, the undersigned noted pervasive problems with Lubbe's Complaint.  Generally, although Lubbe pleaded a great many facts, it was entirely unclear to both Defendants and the undersigned which facts Lubbe contended gave rise to which cause of action or which Defendants were implicated in which cause of action.  Lubbe's live Complaint is no better.  *See* Dkt. #45. While this may seem overly faultfinding, it has serious implications for Defendants and the undersigned.  For instance, Lubbe's causes of action require an adverse employment decision, but it is not entirely clear which specific acts Lubbe contends constitute adverse employment actions or actionable retaliation.  Nor is it entirely clear which

speech Lubbe contends prompted any retaliation. At the hearing, Lubbe's attorney was asked to specifically articulate his causes of action and their bases, and he struggled to do so.

Accordingly, the undersigned will rely on Defendants' articulation of Lubbe's claims and their bases, which Lubbe did not dispute in his response. *See* Dkt. #85 at 3; Dkt. #88. Lubbe asserts constructive discharge and procedural due process claims based on violations of his First and Fourteenth Amendment rights against Director McCraw. Against the remaining defendants, Lubbe asserts claims for: (1) retaliation for his exercise of his First Amendment right to petition; (2) constructive discharge in violation of his substantive due process rights; and (3) violation of his right to equal protection. Defendants collectively move for summary judgment on all of Lubbe's claims and invoke their entitlement to qualified immunity. Defendants assert generalized attacks on the factual or legal bases for Lubbe's claims; they do not assert any individualized bases for summary judgment.

Lubbe argues that Defendants have waived some bases for summary judgment. The undersigned disagrees.  While Defendants' legal analysis could have been more thorough on some issues, Defendants have raised the relevant issues. Moreover, because Defendants assert qualified immunity, Lubbe had the burden to show that his constitutional rights were violated under clearly established law.

## II.  APPLICABLE LAW

### A.  Standard of Review

Summary judgment is appropriate only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). It is not the court's responsibility to hunt through the summary judgment record to determine if a party's arguments are supported by the record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.").

The court will view the summary judgment evidence in the light most favorable to the non-movant. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id.*

## B.      Qualified Immunity

In order to state a claim under § 1983, a plaintiff must allege a violation of the Constitution or a federally granted right, and that the violation was committed by someone acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).  However, qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  First, courts ask whether the facts, taken in the light most favorable to the plaintiff, show the official's conduct violated a federal constitutional or statutory right. *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (per curiam). Second, courts ask whether the right in question was "clearly established" at the time of the violation. *Id.* at 1866.  A court has discretion to decide which prong to consider first. *Id.*; *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (evaluating qualified immunity at the motion to dismiss stage). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lytle v. Bexar Cty.*, 560 F.3d 404, 410 (5th Cir. 2009) (quotations omitted). "When considering a defendant's entitlement to qualified immunity, [a court] must ask whether the law so clearly and unambiguously prohibited his conduct that 'every reasonable official would understand that what he is doing violates [the law].'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  Courts should define the "clearly established" right at issue on the basis of the "specific context of the case," but at the same time "must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions." *Tolan*, 134 S. Ct. at 1866. A plaintiff has the burden of

overcoming the qualified immunity defense. *Bennett v. City of Grand Prairie*, 883 F.2d 400, 408 (5th Cir. 1989).

## III.    Evidentiary Issues

Before reaching the parties' arguments, the court must address Defendants' objections to Lubbe's Exhibits 1, 2, and 3 submitted with his response.  Exhibit 1 is the Declaration of Darren Lubbe.  Defendants argue "[s]elf-serving allegations are not the type of significant probative evidence required to defeat summary judgment," and "a vague or conclusory affidavit is insufficient to create a genuine issue of material fact in the face of conflicting probative evidence." Dkt. #89 at 3 (citing *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013)).  The court also notes that after Defendants filed their reply brief, Lubbe filed a Notice informing the court that certain facts in Lubbe's response brief and declaration were misstated because his attorney inadvertently omitted corrections Lubbe had made to his draft declaration from the version that Lubbe ultimately signed. Dkt. #90.  Seven days later, Lubbe filed an unopposed motion to substitute his corrected Declaration, which was granted. Dkt. #92.

"[S]elf-serving allegations are not the type of significant probative evidence required to defeat summary judgment." *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir.2001) (internal quotation marks and citation omitted). Thus, without more, a vague or conclusory affidavit is insufficient to create a genuine issue of material fact in the face of conflicting probative evidence. *See Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 482 (5th Cir. 2002) (collecting citations).  Although self-serving, as most party affidavits are, Lubbe's declaration is not vague or conclusory.  It is 76 paragraphs of a fairly detailed recount of Lubbe's version of events. Dkt. #92-1. Defendants could have, but did not, impeach his declaration with his deposition in their reply brief. *See* Dkt. #89.  The court overrules Defendants' objection to Lubbe's declaration.

Defendants describe Exhibits 2 and 3 as "admittedly documents Lubbe either self-generated or collected from unverified sources." Dkt. #89 at 4. Defendants contend the exhibits are inadmissible because they are full of hearsay with no exception, unauthenticated, and lack foundation. *Id.* However, Lubbe's attorney describes Exhibit 3 as documents produced by Defendants during discovery. Dkt. #88 at n.1. In his declaration, Lubbe describes Exhibit 2 as "a copy of all of the Bates-stamped records that I provided to the Defendants in my initial disclosures. The documents therein consist of my notes, photographs that I took, communications that I received, and records that I obtained via the Texas Public Information Act." Dkt. #92-1 (Lubbe Decl.) at ¶ 2. Obviously, Lubbe's production of documents does not render them admissible.

Lubbe cites Exhibits 2 and 3 only on pages 2, 5, 13, and 15 of his response. Dkt. #88 at 2, 5, 13, 15. Lubbe relies on Exhibit 2 at 215, which is a letter from Chief Ruocco, Dkt. #88 at 13, and on Exhibit 3 at 1116, 1118-19, and 1127, which is a transcript of a meeting to which Defendants submitted an audio recording (Dkt. #85 Exh. B-1), Dkt. #88 at 2, 5, 13, 15. When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. *See Ragas,* 136 F.3d at 458; *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 (5th Cir. 1992). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas*, 136 F.3d at 458; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994); *Skotak*, 953 F.2d at 916 n. 7; *see also Nissho–Iwai American Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (it is not necessary "that the entire record in the case . . . be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered"); *cf. U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Accordingly, only Exhibit

2 at 215 and Exhibit 3 at 1116, 1118-19, and 1127 are properly before the court. As Defendants also submitted those with their motion, the court overrules Defendants' objections to those pages and sustains the objections to the remainder of Lubbe's Exhibits 2 and 3.

IV.   **ANALYSIS**

Lubbe asserts First Amendment retaliation claims based on his ordered transfer, which Lubbe contends was a constructive termination, and based on disciplinary measures taken against him.  As they present somewhat different issues, the undersigned will address his First Amendment Retaliatory Constructive Discharge claim and First Amendment Retaliatory Discipline claim separately.  The court will then address Lubbe's procedural due process, substantive due process, and equal protection claims.

### A.    First Amendment Retaliatory Constructive Discharge Claim

Claims brought under the First Amendment's free speech and petition clause are analyzed in the same way.  *Gibson v. Kilpatrick*, 838 F.3d 476, 481 (5th Cir. 2016).  A plaintiff must show that "(1) he suffered an adverse employment action; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighs the employer's interest in promoting efficiency in the workplace; and (4) his speech motivated the employer's adverse employment action."  *Id*. Defendants argue Lubbe's claim fails on all four elements.

Before addressing the merits of Lubbe's claim, the court must first address the Fifth Circuit's very recent opinion in *Bevill v. Fletcher*, __ F.4th __, 2022 WL 420752 (5th Cir. Feb. 11, 2022).  *Bevill* involved a § 1983 First Amendment retaliatory-discharge claim in which the defendants asserted qualified immunity. *Id*. *Bevill* discussed the Fifth Circuit's previous holding in *Sims v. City of Madisonville*, 894 F.3d 632 (5th Cir. 2018), which finally "clarified that a supervisor/coworker of the plaintiff could still be liable for First Amendment retaliation claims

even though the supervisor/coworker did not have the power to terminate the plaintiff's employment." *Bevill*, 2022 WL 420752, at *7.  Lubbe was ordered transferred on November 3, 2017, and *Sims* was issued on June 28, 2018. Accordingly, at the time of Lubbe's transfer, the law was not clearly established that anyone other than Director McCraw could be liable for Lubbe's constructive discharge.  *See Sims*, 894 F.3d at 641.  Accordingly, all defendants except Director McCraw are entitled to qualified immunity as to Lubbe's First Amendment retaliatory constructive discharge claim because the law was not settled as to their liability at the time in question. The court now turns to whether Defendants, including Director McCraw, and are entitled to qualified immunity on any additional bases.

## 1.   Adverse employment action

In the context of First Amendment retaliation, "[a]dverse employment actions are discharges, refusals to hire, refusals to promote, and reprimands." *Lloyd v. Birkman*, 127 F. Supp. 3d 725, 761 (W.D. Tex. 2015) (quoting *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997)). "Under the law of this circuit, however, '[i]t is . . . well established that, for the purposes of a § 1983 retaliation claim, an adverse employment action can include a transfer . . . .'" *Goudeau v. E. Baton Rouge Par. Sch. Bd.*, 540 F. App'x 429, 434 (5th Cir. 2013) (quoting *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999)).  An adverse employment action can include a transfer because the transfer may serve as a demotion. *Sharp*, 164 F.3d 933.  "To be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement." *Id*.

Defendants contend Lubbe did not suffer an adverse employment action.  Relying on Director McCraw's deposition testimony, Defendants argue the decision to transfer Lubbe was

made solely by Director McCraw and there is no evidence Director McCraw knew it would lead to Lubbe's resignation. Dkt. #85 Exh. G (McCraw Depo.) at 21:15-22:11, 42:1-18, 43:17-45:20, 46:18-47:4, 48:19-50:5, 56:17-18, 71:10-72:7.  Relying on his own declaration, Lubbe contends that he told Director McCraw that he could not move that far from his current position. Dkt. #92-1 (Lubbe Decl.) at ¶ 72.

Each side's evidence rests on the word of a party.  Moreover, Director McCraw's testimony is not at clear as Defendants describe it to be. Director McCraw stated he was surprised that Lubbe resigned and "if someone had told me that [Lubbe could not be transferred], *I don't recall it*." McCraw Depo. at 21:19-25 (emphasis added); *see also id.* at 22:14-18.  Similarly, Director McCraw's testimony is inconsistent as to whose idea it was to transfer Lubbe.  *Id.* at 41:23-42:1 ("I don't—well, I didn't approve it, but I gave approval. I—I told the chain of command that if they think it's in the best interest of the department, then please do.").

However, Defendants' argument that Lubbe did not suffer an adverse employment action raises a more fundamental question for the court. Lubbe's only objection to the transfer was on a personal level—due to a custody order his wife and stepchildren could not move more than three counties away from their current home and Lubbe asserts he could not afford to support two households.[5]  *See* Dkt. #92-1 (Lubbe Decl.) at ¶¶ 72, 74 ("If the director had transferred me to a station closer to Mt. Pleasant, such as the Tyler or Texarkana office, then I would not have been forced to retire."). Lubbe does not assert a transfer to Conroe was less prestigious, involved less

---

[5] Lubbe testified that he told OIG investigator Lt. Negri that he requested multiple times to be temporarily moved from the Mt. Pleasant office. Dkt. #85 Exh. E (Lubbe Depo.) at 144:20-146:7 ("Why wouldn't they give me a temporary assignment in Texarkana or Tyler or Dallas where my parents live, just something to get out of that office until this investigation was done?"). It is undisputed that Lubbe's issue with the transfer was the geographical distance from his home. In his declaration, Lubbe states he was ordered to transfer outside of Region 1, and he chose Conroe because it was closest. Dkt. #92-1 (Lubbe Decl.) at ¶ 71. However, Chief Ruocco testified that if Lubbe had asked to go to Tyler or Texarkana, he would have approved it. Dkt. #85 Exh. H (Ruocco Depo.) at 84:13-17. Notably, those offices are still within Region 1, contrary to the transfer order. *See* Dkt. #85 Exh. C (transfer order).

desirable working hours or job duties, was generally viewed a punishment, was otherwise ill-regarded within DPS, or would reflect badly on him. Director McCraw testified that he did not believe Conroe was an undesirable assignment.  Dkt. #85 Exh. G (McCraw Depo.) at 47:2-4 ("We're not talking, you know, we're talking Conroe is a pretty good position. In fact, I've got a lot of Laredo agents who would love to be in Conroe."). At the hearing, the court asked Lubbe's attorney for caselaw supporting his position that a transfer, which is personally but not professionally detrimental, can be a constructive discharge.  Lubbe directed the court to the cases cited in his brief.  In his brief, Lubbe cited *Goudeau v. E. Baton Rouge Par. Sch. Bd.*, 540 F. App'x 429, 434 (5th Cir. 2013), and *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999). Those cases involved transfers to a less prestigious workplace or position, which Lubbe does not assert here. They are the same cases the undersigned cited in his previous Reports and Recommendations. However, at the motion to dismiss stage, the undersigned held that "[w]hether the transfer was *objectively* worse is not an issue that should be resolved at the motion to dismiss stage." Dkt. #40 at 11 (emphasis added); *see also* Dkt. #30 at 11 in 1:29-CV-1073-RP (same).

"'[A] plaintiff's subjective perception that a demotion has occurred is not enough' to constitute an adverse employment decision." *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 221 (5th Cir. 1999) (quoting *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996)); *Breaux v. City of Garland*, 205 F.3d 150, 160 (5th Cir. 2000). Courts have recognized that a transfer not involving a reduction in pay may constitute an adverse employment decision, but those transfers have been objectively worse for the employee. *See Forsyth*, 91 F.3d at 774 (previous positions "were more prestigious, had better working hours, and were more interesting than night patrol" and few officers voluntarily transferred from previous position to new position; and "other officers had been so transferred as punishment"); *Vojvodich v. Lopez*, 48 F.3d 879 (5th Cir. 1995) (plaintiff

saw his transfer as a demotion, offered less job satisfaction, fewer benefits, and was a career setback; another official testified that "an involuntary transfer from the position of Narcotics Lieutenant to Communications/Dispatching Lieutenant would be a punitive transfer to a less desirable, less prestigious position"); *Click v. Copeland*, 970 F.2d 106, 109 (5th Cir. 1992) (jobs in the jail are not as interesting or prestigious as jobs in the law enforcement section and thus the transfers could be considered demotions); *Fyfe v. Curlee*, 902 F.2d 401 (5th Cir. 1990) (holding that a transfer to a less desirable but equally paying job constituted a demotion). Lubbe has not shown that the law was clearly established that a transfer that was subjectively unappealing for purely personal reasons could constitute a constructive discharge. Defendants are entitled to qualified immunity on this basis.

### 2.    Public concern

A claim of retaliation for exercising First Amendment rights exists only if a plaintiff spoke as a citizen on a matter of public concern. *Johnson v. Halstead*, 916 F.3d 410, 422 (5th Cir. 2019) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *Gibson v. Kilpatrick*, 838 F.3d 476, 481 (5th Cir. 2016)).  Whether a statement is made as an employee or as a citizen and whether the speech at issue is on a matter of public concern are both questions of law. *Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 736, 740 (5th Cir. 2015); *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 184 (5th Cir. 2005).

Before his transfer, Lubbe had filed both his EEO and his EEOC complaints. Lubbe filed his EEO complaint with DPS's Equal Employment Opportunity ("EEO") office on November 14, 2016. Dkt. #85 Exh. A at 637-42. Although Lubbe describes his EEO complaint as challenging Capt. Milanovich's religious harassment, the EEO complaint actually raised a myriad of grievances. Dkt. #85 Exh. A at 0637-42. Lubbe did allege religious harassment by Capt.

Milanovich, *Id.* at ¶¶ 10, 15; but he also alleged Capt. Milanovich discriminated and harassed him based on his SRT membership, *id.* at ¶¶ 11, 16-17; Capt. Milanovich's misuse of state resources[6] rose to criminal behavior, *id.* at ¶¶ 12, 19-20; and Capt. Milanovich acted unprofessionally and harassed other employees, *id.* at ¶¶ 13, 22-25.  Lubbe specifically stated he chose to file an EEO complaint rather than take his grievances to his chain of command because he feared retaliation but some of his complaints had been shared with Lt. Mulch. *Id.* at ¶ 14 (stating complaints in ¶¶ 10-13 had been shared with Lt. Mulch).  Lubbe filed his complaint with the Equal Employment Opportunity Commission ("EEOC"), which contained his EEO complaint, on August 11, 2017. *Id.* at 637-42.  In his EEOC complaint, Lubbe states that since filing the EEO complaint alleging religious discrimination, he began to face differing terms and conditions of his employment including escalating discipline, being told he should find another job or transfer, removal of collateral job duties and commensurate loss of pay, and exclusion from activities related to his work. *Id.* at 626.

The court first addresses whether Lubbe made the EEO and EEOC complaints as a citizen or as an employee.[7] In this determination, courts consider whether the speech was within the ordinary scope of the plaintiff's job description and whether the plaintiff took his concerns to persons outside the work place. *Gibson v. Kirkpatrick*, 838 F.3d 476, 482 (5th Cir. 2016). In this instance, Lubbe took his concerns to organizations that handle *employee* complaints, namely the EEO and EEOC.  The EEO may have been outside of Lubbe's immediate chain of command, but that complaint was eventually acted on by one of Lubbe's superior officers.  *See* Dkt. #85 Exh. A at 674-675 (letter of reprimand from Assistant Director Ruocco to Capt. Milanovich).

---

[6] Lubbe alleged Capt. Milanovich took home two office chairs and may have used a DPS trailer for personal use. Capt. Milanovich was later cleared of this allegation. Dkt. #85 Exh. A at 674-675.

[7] Given their overlap, some court collapse the questions of whether the speech was made in the plaintiff's role as employee or as a citizen with whether the speech involved a matter of public concern. *Gibson*, 838 F.3d at 481 n1.

Additionally, the relief that Lubbe sought was entirely directed to his employment situation.  *See* Dkt. #85 Exh. A at 642 ¶ 35. Accordingly, the undersigned finds Lubbe spoke as an employee and not as a citizen.

"Matters of public concern are those which can be 'fairly considered as relating to any matter of political, social, or other concern to the community.'" *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). "While speech pertaining to internal personnel disputes and working conditions ordinarily will not involve public concern, speech 'complaining of misconduct within the police department . . . [is] speech addressing a matter of public concern.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Branton*, 272 F.3d at 739).  In determining whether a plaintiff spoke primarily on a matter of public concern or on a matter of personal interest, a court must consider "the content, form, and context of a given statement, as revealed by the whole record." *Salge*, 411 F.3d at 186 (citing *Connick*, 461 U.S. at 147–48). These factors "must be considered as a whole package, and [their] significance . . . will differ depending on the circumstances of the particular situation." *Moore v. City of Kilgore*, 877 F.2d 364, 370 (5th Cir. 1989).

Defendants contend Lubbe's speech did not involve a matter of public concern because his EEO complaint solely concerned his personal issues with his superiors. Dkt. #85 at 15. Lubbe argues speech about unlawful forms of discrimination is inherently a matter of public concern and his complaints about religious discrimination were affirmed at least in part.  Dkt. #88 at 20 (citing Dkt. #85 Exh. H (Ruocco Depo.) at 37:17-38:2 (stating complaints about Capt. Milanovich bringing up religion were sustained); Dkt. #85 Exh. A at 674-675 (letter to Capt. Milanovich sustaining allegation that Capt. Milanovich created a hostile work environment by harassing Lubbe with repeated references related to religion, church attendance, and Christian values; sustaining

allegation that he acted unprofessionally while addressing administrative staff; finding unfounded the allegation that he appropriated DPS property).

Lubbe's speech contained a mix of personal concerns and what could generously be described as public concerns.  Lubbe's complaints included grievances about Capt. Milanovich's alleged misconduct with respect to state property, Capt. Milanovich's mistreatment of staff, Capt. Milanovich's repeated attempts to proselytize Lubbe to Capt. Milanovich's church, Capt. Milanovich's handling of disciplinary issues, and Capt. Milanovich's harassment of Lubbe based on Lubbe's SRT membership.  Dkt. #85 Exh. A at 633-46.  The content of Lubbe's complaint suggests his speech certainly concerned private matters and possibly matters of public concern.

As noted above, Lubbe's speech took the form of EEO and EEOC complaints. Despite Lubbe alleging misuse of state property, he did not make a criminal complaint about the alleged misuse.  Although Lubbe alleged religious discrimination by Capt. Milanovich, his complaints were not made to the public. Instead, his complaints were made in the form of employee grievances seeking employment redress. The form of Lubbe's speech suggests it involved private concerns.

Finally, the context of Lubbe's speech is informative.  As Defendants point out, Lubbe made his EEO complaint the day after he was informed that he would receive some sort of discipline for the Tire Incident.  Dkt. #85 Ex. E (Lubbe Depo.) at 36:17-39:11. During that same conversation, Lubbe was also told that he had "lost all [his] trust with the guys" and he should consider a transfer. *Id*. Lubbe testified that after that conversation he "was in a panic" and "in fear, like totally fear" and that was what motived the complaint. *Id*.  Similarly, Lubbe filed the EEOC complaint the day after he was informed that he would be suspended for five days and placed on six months of probation for the Tire Incident. The context of Lubbe's complaint—coming in the midst of ongoing employment issues—suggests Lubbe's speech was private in nature.

Lubbe argues "his complaints about Captain Milanovich and religious harassment were 'subject[s] of legitimate news interest'" because they were, in fact, reported by news organizations." Dkt. #88 at 21 (citing Exh. 5 "Lawsuit against DPS alleges corruption, claims cover-ups compromised Longview murder case," November 28, 2018 KLTV, and Exh. 6 Glenn Evans, "Lawsuit alleging DPS corruption spills into probe of Horaney murder in Gregg County," November 28, 2018). However, at the hearing, Lubbe's attorney stated he was a reporter before he became an attorney and he notified local news organizations about the lawsuit.  In other words, Lubbe generated the public interest he now relies upon. More importantly, as the titles of the news items indicate, the news coverage was not over Lubbe's original speech, but the lawsuits he filed and the implications on a murder investigation. *Id*. Accordingly, this does not demonstrate that Lubbe's speech at issue was a matter of public concern.

In mixed-speech cases, courts conduct a balancing of all three factors but weigh context and form "more heavily." *Gibson*, 838 F.3d at 487 (citing *Teague*, 179 F.3d at 382-83). Courts "'cannot allow the "mere insertion of a scintilla of speech regarding a matter of public concern,' to 'plant the seed of a constitutional case.'"" *Graziosi*, 775 F.3d at 740 (internal citations omitted). Weighing these considerations, Lubbe's speech concerned private employment issues. *See* "Though the content of [Lubbe's complaints] was a mix of private and public concerns, private concerns predominate. Both the form and context of the [complaints] show that it was a matter of private concern." *Gibson*, 838 F.3d at 487. Internal grievances are not entitled to First Amendment protection. *Graziosi*, 775 F.3d at 738 (citing *Salge*, 411 F.3d at 187 (reiterating that speech is not a matter of public concern when it is made solely in furtherance of a personal employer-employee dispute)); *Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 383 (5th Cir. 1999) (concluding that speech made within the context of an employee-employer dispute weighed heavily against a

finding that the speech was of the public's concern); *see also Day v. South Park ISD*, 768 F.2d 696, 697 (5th Cir. 1985); *Rathjen v. Litchfield*, 878 F.2d 836, 841-42 (5th Cir. 1989). Because they did not involve matters of public concern, Lubbe's complaints are not entitled to First Amendment protections.

3.      Weighing the Interests

Defendants also argue that any speech on a matter of public concern did not outweigh DPS's interest in promoting efficiency and professional capability within its offices. Dkt. #85 at 15-16. Defendants contend "[e]xcising [Lubbe] from the Mount Pleasant office was the most efficient way to restore order and professional capability for all involved, to include Lubbe." *Id*. at 16. Lubbe erroneously argues the court may not weigh the evidence to consider this factor at summary judgment and that Defendants have waived the issue.

Courts use the *Pickering v. Board of Education* balancing test to consider the "balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Garza v. Escobar*, 972 F.3d 721, 727 (5th Cir. 2020); *see Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)); *Pickering* balancing is a question of law. *Garza*, 972 F.3d at 728 (citing *Bickel v. Burkhart*, 632 F.2d 1251, 1256 (5th Cir. 1980)). "Because 'police departments function as paramilitary organizations charged with maintaining public safety and order, they are given more latitude in their decisions regarding discipline and personnel regulations than an ordinary government employer.'" *Graziosi*, 775 F.3d at 740 (quoting *Nixon v. City of Houston*, 511 F.3d 494, 498 (5th Cir. 2007)).

Pertinent considerations as to whether a law enforcement officer's interest in speaking outweighed his department's interest in promoting efficiency include "whether the statement

impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Boyd v. Mississippi Dep't of Pub. Safety*, 751 F. App'x 444, 450 (5th Cir. 2018) (quoting *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)). "Preserving loyalty and close working relationships within the department are important considerations." *Graziosi*, 775 F.3d at 740.

As mentioned above, even before he filed his first complaint, Lubbe was told in November 2016 that he had lost the trust of the men he worked with and that he should consider a transfer. *See* Dkt. #85 Ex. E (Lubbe Depo.) at 36:17-39:11. As indicated by the portions of his EEO complaint that are unrelated to his allegations of religious harassment and misuse of state property, Lubbe had significant issues with his chain of command. Dkt. #85 Exh. A at 637-44. Lubbe's EEO complaint also implicated relationships between others in the Mt. Pleasant office. Additionally, Lubbe was known to have recorded conversations with others in his office, eroding their trust. Defendants also describe problems with Lubbe in the Mt. Pleasant office unrelated to his speech. Dkt. #85 at 3-7 (and citations therein). Given the lack of trust Lubbe's coworkers had in him and Lubbe's issues with his chain of command, the undersigned finds Lubbe's interest in freely voicing his concerns does not outweigh DPS's interest in promoting efficiency and professional capability within its offices. *See Graziosi*, 775 F.3d at 740 (holding a police officer's First Amendment interest in posting critical statements on social media concerning the police chief's leadership did not outweigh the police department's interest in preserving loyalty and close working relationships) ("the context—namely that [plaintiff] made the posts immediately after returning to work from a suspension and that she made the posts because she was angry and dissatisfied with the Chief's decision not to send officers to [a] funeral—weighed against a finding that she spoke

on a matter of public concern"); *Boyd*, 751 F. App'x at 450 (holding plaintiff's interest in his speech that Mississippi DPS was "favoring one race over others" did not outweigh DPS's interest in promoting efficiency).

### 4.    Motivation

Defendants argue there is no evidence Lubbe's speech was a motivating factor behind his transfer and Director McCraw specifically and repeatedly rebuts Lubbe's assertion otherwise.  On this issue, both sides rest on their own self-serving affidavits or testimony—Defendants on Director McCraw's testimony and Lubbe on his own declaration.  As just discussed, Director McCraw had ample, nonretaliatory bases to transfer Lubbe.  However, Director McCraw's testimony is not entirely clear as to whether the decision to transfer Lubbe was his own idea or came from someone lower in Lubbe's chain of command.  Thus, a fact issue exists on whether Director McCraw was motivated by Lubbe's complaints to transfer him out of the Mt. Pleasant office.

### 5.    Conclusion

Under *Sims*, all Defendants except Director McCraw are entitled to qualified immunity as to any liability based on Lubbe's alleged constructive discharge from DPS.  Additionally, Lubbe has not shown that the law was clearly established that a personally undesirable transfer could constitute a constructive discharge, that he engaged in constitutionally protected speech, or that his speech on a matter of public concern outweighed DPS's interest in a well-run Mt. Pleasant office.  Accordingly, all Defendants are entitled to qualified immunity on Lubbe's First Amendment retaliatory constructive discharge claim.

**B.      First Amendment Retaliation Claim**

In addition to the transfer order, Lubbe contends his chain of command retaliated against him after he made his EEO complaint. As discussed above, the undersigned does not find that the EEO complaint contained constitutionally protected speech.  Nonetheless, the court will address the remaining elements of Lubbe's claim.

A formal reprimand is an adverse employment action. *Lloyd*, 127 F. Supp. 3d at 761. However, "[m]any actions which merely have a chilling effect upon protected speech are not actionable." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997). "Actions such as 'decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures,' while extremely important to the person . . . , do not rise to the level of a constitutional deprivation." *Id.* (citing *Dorsett v. Bd. of Trustees for State Colleges & Universities*, 940 F.2d 121, 123 (5th Cir. 1991)). Assignments to duties that are regular aspects of the plaintiff's position are also not actionable. *Pierce v. Tex. Dep't of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). At the hearing, Lubbe identified three acts that could be considered "adverse employment actions" that occurred after he filed the EEO complaint—the disciplinary actions taken against him for the Tire Incident, the HR-31 written disciplinary action for the June 22, 2017 traffic stop, and the second HR-31 written disciplinary action that was a follow up to the previous HR-31. In his response, Lubbe also asserts his negative performance review was also an adverse employment action.  Dkt. #88 at 19 (citing *Klebe v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 450 F. App'x 394, 396 (5th Cir. 2011)). Lubbe has not shown that the law was clear that any other acts he alleges were retaliatory, such as being assigned to desk duty or being forced to shave his beard, rise to the level of adverse employment actions.

Defendants contend that Lubbe admitted to fault in each of these incidents and there is no causation evidence demonstrating these measures were retaliatory in nature.  Dkt. #85 at 18. Defendants also argue that Lubbe admitted to using the EEO process as retaliation for his reprimands, not the other way around. *Id*. (citing Ex. E (Lubbe Depo.) at 36:17-39:11, 132:18-144:8). Lubbe argues he was subjected to considerably harsher punishment than Brock for the Tire Incident, "who was at the very least an equal participant," and he was subjected to harsher punishment that Capt. Milanovich, "even though the captain's misconduct was far more serious."

Lubbe's arguments fall short.  He and Brock were not "equal participants" in the Tire Incident. The tires came from Lubbe's truck, it was Lubbe's idea to give Brock the old tires, and it was Lubbe's judgment that was questioned with respect to how much he obligated DPS to pay for the new tires.  Further, Brock was ultimately punished more severely than Lubbe because Director McCraw reduced Lubbe's punishment to a one-day suspension, whereas Brock was given a one-day suspension and six-months of probation.[8] Nor are Lubbe and Capt. Milanovich comparable. Although Lubbe disagrees with the finding, Lubbe's allegation that Capt. Milanovich misused state property was not substantiated. Lubbe's allegation of religious harassment was substantiated, and Capt. Milanovich received a formal written reprimand.  Dkt. #85 Exh. H (Ruocco Depo.) at 46:21-47:2.  Again, although Lubbe disagrees with it, Chief Ruocco thoroughly explained why Capt. Milanovich was not given a harsher consequence and stated a harsher consequence would have followed if Capt. Milanovich continued his behavior.[9] *Id*. at 47:3-55:11.

---

[8] Lubbe points the court to no authority that the initial punishment and not the final reduced punishment should be considered as the adverse employment action.

[9] Chief Ruocco also testified that in his conversations with Lubbe, Lubbe raised the subject of his religious beliefs, separate and apart from describing his complaints about Capt. Milanovich.  Dkt. #85 Exh. H (Ruocco Depo.) at 47:3-57:21. Chief Ruocco further testified that religious talk in the Mt. Pleasant office did not seem to be a problem for anyone, and Lubbe only raised the issue once he believed he was going to be reprimanded for the Tire Incident. *Id*.

Lubbe also argues the evidence shows Major Williams did not file the OIG complaint against Lubbe for the Tire Incident until Lubbe filed his EEO complaint and the DPS investigator was troubled by this timing.  Dkt. #88 at 14, n.6 (citing Dkt. #85 Exh. B at 575).  However, Lubbe does not show that filing an OIG complaint about the Tire Incident is itself an adverse employment action.  "Although a reprimand can constitute an adverse employment action, an investigation does not." *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998) (citing *Pierce*, 37 F.3d at 1150). Further, the OIG report states that "Major Williams reported to Lt. Heintz that the used tire incident was directly related to the EEO allegation and that a full review of the facts was needed to accurately report the true matter at hand."  Dkt. #85 Exh. B at 583.

As noted above, because of its role in maintaining public safety, DPS is given more latitude in its decisions regarding discipline and personnel matters than other governmental employers. *See Boyd*, 751 F. App'x at 450.  Accordingly, the undersigned finds Lubbe's speech did not outweigh DPS's interest in addressing the Tire Incident and Highway Incident.  Therefore, the undersigned will recommend Defendants' summary judgment motion be granted as to this claim.

## C.   Procedural Due Process

"Constructive discharge in a procedural due process case constitutes a § 1983 claim only if it amounts to forced discharge to avoid affording pretermination hearing procedures."  *Fowler v. Carrollton Pub. Library*, 799 F.2d 976, 981 (5th Cir. 1986).  Defendants argue that Lubbe does not assert that any defendant attempted to avoid providing him with pretermination procedures and the evidence establishes that Lubbe voluntarily retired without any request for any pretermination procedures or any attempt to remedy the alleged reasons for his decision to retire.  Dkt. #85 at 14.

Lubbe did not respond to this argument. Accordingly, as stated at the hearing, Lubbe has waived his right to proceed on this claim and the undersigned will recommend this claim be dismissed with prejudice.

### D.     Substantive Due Process Claim

Public officials violate substantive due process rights if they act arbitrarily or capriciously. *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 562–63 (5th Cir. 2003) (citing *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 149 (5th Cir.1991); *Fowler v. Smith*, 68 F.3d 124, 128 (5th Cir. 1995)).  To prove a substantive due process claim, Lubbe must show: (1) "that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011) (citation omitted).

As to the first element, Defendants argue Lubbe did not have a property right in his employment with DPS.  *See* Dkt. #85 at 16 (citing *Spears v. McCraw*, 2021 WL 3439148 (5th Cir. Aug. 5, 2021). Lubbe argues he has property interest in his employment under Texas Government Code § 411.007(e) and *Spears* is not on point because that case only presented a procedural due process claim.  Dkt. #88 at 23. Defendants also contend that, even if his resignation was considered a constructive discharge, Lubbe voluntarily forwent any attempt at due process.  Dkt. #85 at 17. In response, Lubbe points out that exhaustion of administrative remedies is not an element to this claim. Dkt. #88 at 23. As to the second element, Defendants contend Lubbe must show an abuse of power that shocks the conscience, and Director McCraw's decision was made in connection with numerous pertinent factors, none of which involved Lubbe's personal issues with his supervisors. Dkt. #85 at 17. Lubbe argues that First Amendment rights are among those protected

by substantive due process, and thus this claim stands or falls with his First Amendment claim. Dkt. #88 at 23-24.

Lubbe is correct that a procedural due process, not substantive due process, claim was asserted in *Spears*. *See Spears*, 2021 WL 3439148 at *2. However, that procedural due process claim also required a property interest in employment and, like Lubbe, Spears relied on under Texas Government Code § 411.007(e) to show that interest. *Id*. In *Spears*, the Fifth Circuit did not affirmatively accept or reject Spears's contention that Texas Government Code § 411.007(e) provided him a property interest in his employment. *Id*. Instead, the Fifth Circuit held that "*[a]ssuming* this provision of Texas law provides Spears with a protected property interest," Spears failed to demonstrate a violation of his rights because he remained employed by DPS. *Id*. (emphasis added). Accordingly, Defendants are entitled to qualified immunity as to this claim because Lubbe has not shown the law was clearly established that he had a property interest in his continued employment with DPS.[10]  The undersigned will recommend that Defendants' motion be granted as to this claim and this claim be dismissed with prejudice.

### E.    Equal Protection Claim

This court previously described the legal framework for Lubbe's Equal Protection claim:

> To state a claim of discrimination under the Equal Protection Clause and section 1983, the plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004).  An equal protection religious discrimination claim requires allegations that (1) the plaintiff held a bona fide religious belief, (2) the belief conflicted with a requirement of employment, (3) the employer was informed of the belief, and (4) the plaintiff suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Davis v. Fort Bend Cty.*,

---

[10] In the previous Report and Recommendation in this case, the undersigned relied on *Finch* to find that "[t]o the extent [Lubbe's] substantive due process claim is based on [his] First Amendment claims, the merits of this argument stand or fall based on the merits of the First Amendment argument discussed [supra]." Dkt. #40 at 15 (quoting *Finch*, 333 F.3d at 563).  However, a closer reading of *Finch* reveals a key distinguishing fact—Finch was under a two-year employment contract and thus had a property interest in the employment. *Finch*, 333 F.3d at 559.

765 F.2d 480, 485 (5th Cir. 2014); *Lloyd*, 127 F. Supp. 3d at 773 (proof standard for religious discrimination claims brought under § 1983 and Title VII are essentially the same (citing cases)).

Dkt. #40 at 18.  Defendants now argue that "the *Lloyd* case relied on *Merwine v. Bd. of Trustees for St. Int. of Higher Learning*, 754 F.2d 631, 635 n.3 (5th Cir. 1985), where the Fifth Circuit permitted transfer of Title VII elements to a § 1983 claim '[w]hen a § 1983 claim is used as a parallel to a Title VII claim under a given set of facts.' This lawsuit does not and has never included a parallel Title VII claim under Lubbe's asserted facts. Defendants respectfully assert that the Title VII standard, and not the class-of-one argument, is misapplied in this case." Dkt. #85 at 19-20.

Lubbe did not attempt to rebut Defendants' legal argument. Dkt. #88 at 34-35. Accordingly, Lubbe has not met his burden to show that "the law so clearly and unambiguously prohibited his conduct that 'every reasonable official would understand that what he is doing violates [the law].'" *See Morgan*, 659 F.3d at 371; *Bennett*, 883 F.2d at 408. The undersigned finds Defendants are entitled to qualified immunity as to this claim.

## IV.   RECOMMENDATIONS

For the reasons given above, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendants' Motion for Summary Judgment (Dkt. #85) and **DISMISS WITH PREJUDCE** all of Lubbe's claims.

## V.   OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED February 25, 2022.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE